BEFORE THE FIRST DIVISION, MAY 11, 1960

**No. 64154.**—Alltransport, Incorporated, and K. Heitz Import Co. et al. *v.* United States, protests 260355–K, etc. (New York).

OLIVER, Chief Judge: The three protests enumerated in schedule "A," hereto attached and made a part hereof, relate to merchandise variously described on the invoices as "plastic Slide Binders 'Lindia,' " or " 'Lindia' plastic mounts," or " 'Lindia' frames for slides." Although the merchandise is identical in all of the protests, the collector applied a different classification in each. In protest 260355–K, the merchandise was classified by similitude as cellulose acetate articles under paragraph 31(a)(2) of the Tariff Act of 1930, as modified by T.D. 51802, and paragraph 1559 of the Tariff Act of 1930, with a duty assessment at the rate of 20 per centum ad valorem. In protest 285699–K, the items were classified by similitude as articles composed in chief value of a compound of cellulose, not acetate, under paragraph 31(b)(2), as modified, and paragraph 1559, as amended, and assessed with duty at the rate of 30 per centum ad valorem. In protest 293509–K, the articles were classified under the provision in paragraph 1539(b) of the Tariff Act of 1930, as modified, for

manufactures wholly or in chief value of a product of which any synthetic-resin or resin-like substance is the chief binding agent, and assessed with duty at 25 cents per pound and 20 per centum ad valorem.

Plaintiffs make several claims in the protests and by amendment thereto.. Most important to our decision herein are the claims for classification by similitude either as manufactures of base metal, not specially provided for, at 22½ per centum ad valorem under paragraph 397, as modified, and paragraph 1559, or as manufactures of paper, not specially provided for, under paragraph 1413 and paragraph 1559, with a duty assessment at the rate of 17½ per centum ad valorem. Plaintiffs also claim that these items are dutiable at the rate of 10 per centum ad valorem under paragraph 1558, as modified, as nonenumerated manufactured articles.

All of the evidence adduced herein was offered by plaintiffs. Following is a summary of the record.

The articles in question (plaintiffs' collective illustrative exhibit 1) are the familiar frames or binders that are used to hold single views of photographic color film for inspection or projection. The frame is 2 inches square. Fitted as an insert in the frame are two layers of thin glass, approximately 1 inch by 1½ inches, that keep the film in place. The laboratory report (plaintiffs' exhibit 2), submitted by the chief chemist of the United States Customs laboratory, shows that the articles in question consist of the following materials by weight:

| | |
|---|---|
| Glass | 58% |
| Polystyrene | 41% |
| Aluminum powder | 1% |

Polystyrene, which is concededly the component material of chief value, is described in the chemist's report as follows:

* * * all unmodified general purpose polystyrenes can be considered similar to each other in that they are polymerized styrene (a derivative of benzene) and are used in the molding of plastic articles. They can be characterized by low specific gravity, excellent crystal clarity, good electrical properties, good resistance to water and selective resistance to chemicals and solvents. General purpose polystyrenes differ from each other chiefly in their resistance to heat, a property which is not discernible without the proper testing equipment.

Referring to the aluminum powder contained in the present merchandise, the chemist's report reads as follows:

4. We are unable to state whether the aluminum powder is only used as a pigment, or used for some other purpose, or used partly as a pigment and partly for some other purpose.

5. The particles of aluminum are scattered through the resin and do not come into contact with one another except in a few instances. However, wherever the aluminum particles are, they are held in place by the synthetic resin.

By deposition taken under a commission duly issued out of this court, plaintiffs introduced the testimony of an engineer employed in Frankfort a/Main, Germany, who stated that he had 8 years' experience in the structure, chemistry, characteristics, and processing of thermoplastic materials, including the design and production of "Lindia" slide holders or binders, such as the items under consideration. Describing the nature and character of the materials used in the manufacture of the "Lindia" slide frames in question, the witness testified that "bronze-color polystyrene" is the raw material generally used in making such frames, and that the aluminum powder worked into the polystyrene has two functions, which he described as follows:

a) It has the effect of a dye-stuff, similar to an inorganic pigment and furnishes the metal effect and the metallic appearance.

b) The many small aluminum particles have the effect of many reflectors, with the result that projected light is reflected and dispersed. Thereby the aluminum particles prevent light rays and heat rays from penetrating into the frame. Thus, the practical heat resistance of the polystyrene frame is considerably increased.

The witness further stated that the polystyrene has no influence on the aluminum particles, which are dispersed in the polystyrene at random, and that the aluminum particles lie in the random position in which they happen to fall when the two materials are mixed.

Plaintiffs' witness, who appeared at the time of trial, is the resident representative for Technicolor, Inc., in charge of sales in New York City. He stated that he has been associated with the color-film phase of the camera business since 1935 and that his experience in connection therewith has extended through 40 states of the United States. His testimony relates to plaintiffs' claims for classification by similitude. In this connection, he produced two slide holders or frames. One of them was identified as "a Kodachrome 2 by 2 slide mount," consisting of "a Kodachrome color film sandwiched between these two pieces of paper" (plaintiffs' exhibit 4). It was stipulated between the parties that the article "has been fabricated from paper cut to shape" and then further manufactured. The witness testified that the paper holder or binder (exhibit 4, supra) is a permanent mounting, that his company and other processors "in the amateur field" return the color slides in this same kind of mounting, and that, based on his experience, "over 99 per cent" of the color slides returned by processors are mounted on this paper or cardboard mounting. The other slide holder or frame, referred to by the witness, was a metal and glass mount (plaintiffs' illustrative exhibit 5), which, as stipulated by counsel for the respective parties, is "composed in chief value of iron, steel or aluminum and is not in part of or plated with platinum, gold or silver nor colored with gold lacquer." The article is a metal frame, 2 inches square, which, like the items in question, has two thin layers of glass fitted as an insert for the color slides. The witness testified that this metal and glass mount more nearly resembles the use of the present merchandise than does the paper mount (exhibit 4, supra). The oral testimony is supported by an examination of the sample (illustrative exhibit 5), showing that the metal and glass holder or frame, like the polystyrene article in question, is of rather rigid construction, uses a glass transparency, and is susceptible of reuse.

Counsel for defendant, in his brief, concedes that "classification of the imported merchandise, Coll. Ill. Exhibit 1, under the provisions of paragraph 31(a)(2) and 31(b)(2), by virtue of the similitude clause, is erroneous," and contends that all of the items in question are properly dutiable under the provision in paragraph 1539(b) of the Tariff Act of 1930, as modified by T.D. 52739, for:

Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent, * * *

which was the classification invoked by the collector with respect to the merchandise covered by protest 293509–K.

It has been held that the above-quoted provision of paragraph 1539(b), as modified, is "one subject to the 'preexisting material' doctrine, i.e., that for a manufacture to be classifiable thereunder a 'product of which any synthetic resin or resin-like substance is the chief binding agent' must first exist before a manufacture is made with its use." Burgess Battery Co. v. United States, 43 Cust. Ct. 189, C.D. 2125. Such is not the condition herein. In this case, there was no existence of an independent product of which synthetic resin was the

binding agent prior to the formation of the completed "Lindia" slide holders or mounts. Plaintiffs' uncontradicted evidence shows that polystyrene, a synthetic resin, makes up the body of the frame and that it does not impregnate or influence the aluminum powder with which it is associated as a material. The aluminum powder, as it is mixed with the polystyrene, gives certain qualities to the finished article, making it a more serviceable product. On the basis of the record herein, we find that the polystyrene, as it is used in the imported "Lindia" slide holders or frames, is not a binding agent, and, accordingly, hold that the present merchandise is not within the class of manufactures contemplated by paragraph 1539(b), as modified, *supra*, as alleged by defendant.

In urging classification by similitude, plaintiffs stress the claim for duty at the rate of 17½ per centum ad valorem under paragraph 1413, as modified, as manufactures of paper, not specially provided for. In doing so, counsel, in their brief, point to the testimony, showing that, in quantity of use, the paper mount (exhibit 4, *supra*) exceeds the metal and glass mount (illustrative exhibit 5, *supra*). The statute, however, does not make relative frequency of use the criterion for classification by similitude. Paragraph 1559, as amended, as it is pertinent to the present issue, reads as follows:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, *it shall be subject to the rate of duty applicable to that one* of such two or more articles *which it most resembles in respect to the materials of which it is composed.* [Italics supplied.]

The above-quoted paragraph was judicially construed in *S. S. Kresge Co. et al.* v. *United States*, 46 C.C.P.A. (Customs) 100, C.A.D. 707, wherein the Court of Customs and Patent Appeals stated as follows:

* * *. The paragraph requires the classification of nonenumerated articles by similitude under certain conditions. Obviously, this method of classification presupposes differences between the article in question and those enumerated in the particular paragraph to be invoked. This paragraph does have one principal requirement, i.e., the use of the article in question must most resemble the use to which the enumerated articles may be applied. Furthermore, if the nonenumerated article equally resembles two or more enumerated articles in that particular, then it shall be dutied by similitude to that enumerated article which it most resembles in respect to the materials of which it is composed. It is interesting at this point to note especially that the word "resemble" is employed in the paragraph rather than any word requiring that the use or material of the involved articles be identical. It also should be observed that in the consideration of the similitude clause an article is considered enumerated if it "* * * comes within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an eo nomine designation." *United States* v. *Cochran*, 3 Ct. Cust. Appls. 57, T.D. 32349; *United States* v. *Wecolite Co.*, 45 CCPA 54, C.A.D. 672.

Applying to the issue now before us, the statutory construction enunciated by our appellate court in the foregoing quotation, we find that the metal and glass mount (illustrative exhibit 5, *supra*) more nearly resembles the imported merchandise under consideration "in respect to the materials of which it is composed" (paragraph 1559, as amended), than the paper mount (exhibit 4, *supra*), which two articles, on the basis of the record herein, are the only ones that are proper considerations for classification of the present merchandise by similitude in use.

For all of the reasons hereinabove set forth, we hold the items in question, as heretofore identified, to be classifiable by similitude in use under paragraph 397, as modified, and paragraph 1559, either as originally enacted or as modified, as

manufactured articles, not specially provided for, composed in chief value of iron, steel, or aluminum, but not plated with platinum, gold, or silver, or colored with gold lacquer, and dutiable at the rate of 22½ per centum ad valorem, as claimed by plaintiffs.

That claim, made by valid amendment to the protests, is sustained, and judgment will be rendered accordingly.